UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aspen American Insurance Company,                    Civ. No. 20-659 (PAM/DTS)

                    Plaintiff,

v.                                                   **MEMORANDUM AND ORDER**

Vickie M. Jones, Michael Dan Smilanich,
Smilanich Smile Design, Michael Dan
Smilanich, D.D.S., Ltd.

                    Defendants.

_____

This matter is before the Court on Plaintiff Aspen American Insurance Company's
and Defendant Vickie M. Jones's cross-Motions for Summary Judgment. (Docket Nos.
29, 34.) For the following reasons, the Motions are denied. Plaintiff Aspen American
Insurance Company also seeks a default judgment (Docket No. 29), and that Motion is
denied without prejudice.

**BACKGROUND**

Defendant Vickie Jones was a dental patient of Defendant Dr. Michael Smilanich.
In 2013, Jones began dental treatment with Dr. Smilanich for extractions, implants, and a
temporary bridge. (Compl. (Docket No. 1) ¶ 9.) In March 2014, Jones heard that Dr.
Smilanich was "losing his practice," so she called his office. (Trial Tr. (Docket No. 37) at
50.) His secretary assured Jones that was not so. (Id. at 65.) At Jones's March 13, 2014,
appointment, Dr. Smilanich's secretary again denied that he was losing his practice. (Id.)
Dr. Smilanich admitted to some financial difficulty, but also stated that he would complete
the rest of the dental work related to Jones's permanent bridge within two weeks. (Id. at

51.)  Jones paid him $8,000 in advance for that work.  (Compl. ¶ 12.)  It was atypical for Dr. Smilanich to require full payment before treatment.  (Trial Tr. at 704.)

At the time that Dr. Smilanich accepted Jones's $8,000 payment he was in a precarious financial position.  Dr. Smilanich knew that a receiver had been appointed for his practice, he had not been paying interest on his obligations, the bank was threatening to foreclose on his practice and had commenced litigation against him, his former partner was threatening to foreclose on his part of the mortgage, and a Sheriff's sale for his practice was scheduled for March 24, 2014.  (Id. at 248-49.)  Indeed, at the time, Dr. Smilanich was pulling up the carpet in his office to take it to his home.  (Id. at 67.)  He also owed the IRS $800,000, owed the bank $200,000, and owed his former partner $200,000.  (Id. at 701.)  He had a $13,605 judgment against him in favor of American Express, and he had not filed tax returns for 2009 to 2012.  (Id. at 45, 235.)

Despite his grim financial situation, Dr. Smilanich was "hoping" that he could keep his clinic open.  (Id. at 594-95.)  Nevertheless, a Sheriff's sale took place on March 25, 2014.  (Id. at 248.)  And indeed, the bank foreclosed on his practice, taking his files and chaining the doors.  (Id. at 508.)

Dr. Smilanich cancelled Jones's appointment to complete the bridge, and Jones was not able to reach him until she received a letter from him in September 2014, six months after their last interaction.  (Compl. ¶¶ 13-14.)  After receiving that letter, which explained that Dr. Smilanich had joined Twin Cities Dental Center, Jones made an appointment to see him.  (Id. ¶ 14.; Trial Tr. at 523-24.)  At that appointment, Dr. Smilanich lied to Jones about the reason he had been unavailable, saying that he had suffered a heart attack and

went through a divorce.  (Trial Tr. at 83.)  In truth, he was at an alcohol-rehabilitation facility from June to August 2014.  (Id. at 606-07.)

Dr. Smilanich and Jones had intermittent contact from October 2014 to November 2015.  He performed some dental work on Jones in that timeframe, but he also canceled various appointments with Jones during those months.  (Compl. ¶¶ 15, 17.)  Dr. Smilanich told Jones that he would provide her lower dental implants for free through his university training program; however, because Jones paid for the dental implants in March 2014, those implants would not have been free.  (Id. ¶ 16.)  Finally, in November 2015, Dr. Smilanich seated Jones's permanent bridge, but she disliked the color, so he seated a second permanent bridge later that month.  (Id. ¶ 18.)  Twenty months elapsed between the $8,000 payment in March 2014 and the seating of the permanent bridge in November 2015.

In 2018, Jones sued Dr. Smilanich, Michael Dan Smilanich D.D.S., Ltd., and Smilanich Smile Design ("the Smilanich Defendants") in Minnesota state court, raising two claims: (1) negligence and medical malpractice, and (2) fraud and misrepresentation. (Id. ¶ 2.)  The case eventually went to trial, and the jury found that Dr. Smilanich had committed fraud and misrepresentation, and awarded Jones $100,000 in damages.  (Id. ¶ 3.)  The jury did not find him negligent.  The state court also awarded Jones $39,416.39 in taxable costs, disbursements, and pre-verdict interest.  (Id. at ¶ 24.)

Dr. Smilanich had a Dentists/Oral Surgeons Professional Liability Insurance Policy through Plaintiff Aspen American Insurance Company ("AAIC") on a claims-made basis for December 15, 2017 to December 15, 2018.  (Id. at ¶ 27.)  AAIC defended Dr. Smilanich in Jones's state-court lawsuit under a reservation of rights.  (Pl.'s Supp. Mem. (Docket No.

41) at 8.)

> Dr. Smilanich's professional-liability insurance policy with AAIC states that:

> "[AAIC] will pay all amounts up to the limit of liability for which you become legally obligated to pay as a result of **injury** or **damage**. We will also pay **claim expenses**. The **injury** or **damage** must be caused by a **dental incident** arising out of the supplying of or failure to supply **professional services** by **you** or anyone for whose professional acts or omissions **you** are legally responsible."

(Policy (Docket No. 1-1) at 40 (bold in original).) The policy further states that AAIC does not provide coverage for "**injury** or **damage you** expected or intended, or which a reasonable person could have expected." (Id. at 42 (bold in original).)

Jones and AAIC cross-move for summary judgment as to whether Dr. Smilanich's professional-liability insurance policy with AAIC covers the judgment rendered in the underlying lawsuit. AAIC seeks a declaratory judgment that it is not required to indemnify the Smilanich Defendants for the claims asserted in that lawsuit or defend that action on appeal, and that AAIC has no obligation to satisfy any judgment arising out it. AAIC also seeks a default judgment against the Smilanich Defendants, who have failed to enter an appearance in this matter. Jones seeks to enforce the insurance policy so that she can recover the judgment from AAIC, because Dr. Smilanich has declared bankruptcy and has no ability to pay.

**DISCUSSION**

**A.    Summary Judgment**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and inferences that "may be reasonably drawn from the evidence

in the light most favorable to the nonmoving party." Enter. Bank v. Magna Bank of Mo., 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. Paine v. Jefferson Nat'l Life Ins. Co., 594 F.3d 989, 992 (8th Cir. 2010).

In Minnesota, insurance-policy exclusions "are construed narrowly and strictly against the insurer and . . . in accordance with the expectations of the insured." Travelers Indem. Co. v. Bloomington Steel & Supply Co., 718 N.W.2d 888, 894 (Minn. 2006) (citations omitted). Intentional-act exclusions prevent insurance coverage for an insured's "wanton and malicious acts." Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 613 (Minn. 2001). "The Minnesota Supreme Court has determined that, for purposes of the intentional-act exclusion found in most liability insurance policies, conduct is intentional only when there is specific intent to cause injury." State Farm Mut. Auto. Ins. Co. v. Havemeier, No. 18cv2459, 2020 WL 5500460, at *10 (D. Minn. Sept. 11, 2020) (Wright, M.J.).

Absent evidence of the specific intent to injure, a court may infer an intent to injure as a matter of law "when the nature and circumstances of the insured's acts were such that harm was substantially certain to result," R.W. v. T.F., 528 N.W.2d 869, 872 (Minn. 1995),

or "when the insured acted in a calculated and remorseless manner." Walser, 628 N.W.2d at 613. "The mere fact that the harm was a 'natural and probable consequence' of the insured's actions is not enough to infer intent to injure." Id. (quoting Cont'l W. Ins. Co. v. Toal, 244 N.W.2d 121, 124 (1976)).

"The determination to infer intent as a matter of law results from a case by case factual inquiry, not a bright line rule of law." R.W., 528 N.W.2d at 873. Minnesota courts have not inferred intent to injure in situations involving horseplay or impulsive conduct. See Caspersen v. Webber, 213 N.W.2d 327, 330 (Minn. 1973) (insured pushed a hat-check worker, injuring her); RAM Mut. Ins. Co. v. Meyer, 768 N.W.2d 399, 402-06 (Minn. Ct. App. 2009) (insured caused a classmate to trip or fall through horseplay). However, courts have inferred intent to injure as a matter of law where conduct was dangerous, extreme, or "when the injury involves a criminal act of a serious nature." State Farm Fire & Cas. Co. v. Schwich, 749 N.W.2d 108, 112 (Minn. Ct. App. 2008) (insured provided a syringe of methamphetamine and encouraged another to inject herself); see Woida v. N. Star Mut. Ins. Co., 306 N.W.2d 570, 572-73 (Minn. 1981) (insured shot at an occupied truck); Iowa Kemper Ins. Co. v. Stone, 269 N.W.2d 885, 887 (Minn. 1978) (insured wrapped his fist in a belt before fist fight).

The AAIC policy excludes coverage for "injury or damage you expected or intended, or which a reasonable person could have expected," and AAIC bears the burden

6

of proving that this intentional-act exclusion applies to Dr. Smilanich's conduct.[1]  (Policy at 40 (emphasis omitted).)  AAIC claims that the Court must infer as a matter of law that Dr. Smilanich intended to injure Jones.  Jones contends that AAIC cannot prove any intent to harm because Dr. Smilanich's conduct was not so extreme that there was a high probability of harm, and therefore his conduct was covered under AAIC's policy.

The cases in which courts have inferred an intent to harm involved more egregious conduct than Dr. Smilanich's conduct here, thus the Court declines to infer an intent to injure as a matter of law.  Yet, Dr. Smilanich's conduct was not the type of reactionary horseplay where an intent to injure was not inferred.  Whether Dr. Smilanich's overzealous optimism regarding his financial situation and ability to perform the work for which Jones had paid him negated any potential intent to injure is a factual inquiry.

AAIC claims that the Court must infer that Dr. Smilanich intended to injure Jones because he took a "calculated risk" in accepting Jones's payment when he knew that his dental practice was in peril, and that his statements to Jones and the nature of the jury's verdict for fraud support such an inference.  (Pl.'s Opp'n Mem. (Docket No. 44) at 5.)  But a calculated risk is not a substantial certainty, such that the Court must infer that Dr. Smilanich had the specific intent to injure Jones.  Moreover, a jury verdict for civil fraud does not preclude insurance coverage.  To determine that Dr. Smilanich had committed

---

[1] Jones argues that the policy contains no such broad-sweeping "intentional acts" exclusion. Because the language of the policy, rather than how AAIC refers to the language, governs, this argument lacks merit.

civil fraud, the jury had to find that he intended that Jones rely on his false representations, and that Jones was "harmed as a direct result."  4A Minn. Diss. Judges Ass'n, <u>Minnesota Practice-Jury Instruction Guides</u>, <u>Civil</u>, CIVJIG 57.10.   The jury was not asked to determine whether Dr. Smilanich intended to injure Jones because intent to injure is not an element of civil fraud.  <u>Id.</u>  The evidence presented does not require the Court to infer an intent to injure.

Yet, Jones has failed to establish as a matter of law that Dr. Smilanich lacked the specific intent to injure her.  At trial, Dr. Smilanich testified that he did not intend to harm Jones and that he did not expect the bank to foreclose on his practice because he had previously renegotiated loans with them.  (Trial Tr. at 510, 595.)  But his trial testimony is not dispositive as to his intent, and the Court may consider the totality of the evidence. Jones contends that because Dr. Smilanich ostensibly could have practiced elsewhere, although he had no alternate location in place, he had no intent to harm Jones.  Jones minimizes Dr. Smilanich's knowledge that a Sheriff's sale was scheduled for 10 days after he accepted her $8,000 check and that he faced significant other financial difficulties that would have made continuing his practice nearly impossible, but nevertheless he accepted her full payment in advance of treatment.  Because Dr. Smilanich sent Jones's dental impressions to the lab after her March 2014 appointment, Jones argues that Dr. Smilanich intended to complete her dental work.  (<u>Id.</u> at 592.)  After he sent the impressions, however, Jones was unable to reach Dr. Smilanich for six months, and when she finally did, he remained less than forthcoming about his situation.  The initial two-week timeline to complete Jones's dental work was prolonged to approximately 20 months.

Further, Jones argues that <u>Toal</u> determined that an intentional-act exclusion like the one at issue here is altogether unenforceable because precluding coverage for any "injury or damage . . . which a reasonable person could have expected" would prevent coverage for all injuries that a reasonable person could foresee.  (Def.'s Supp. Mem. (Docket No. 36) at 6.)  But the Minnesota Supreme Court in <u>Toal</u> did not hold that such an exclusion clause was unenforceable; instead, the Court reasoned that "an 'expected injury,' as that term is used in an insurance exclusionary clause, cannot be equated with foreseeable injury."  244 N.W.2d at 125.  Indeed, "in an insurance-contract context, an exclusion provision that precludes coverage for expected or intended harm applies only to the specific harm that the insured intended to cause."  <u>Safeco Ins. Co. of Ill. v. Skar</u>, No. 10cv4789, 2011 WL 3163332, at *3 (D. Minn. July 27, 2011) (Nelson, J.).  Jones's argument is unavailing.

Another factual dispute concerns whether Dr. Smilanich failed to provide dental services to Jones.  The policy provides coverage for any "injury or damage . . . caused by a dental incident arising out of the supplying of or failure to supply professional services by [the insured]."  (Policy at 40 (emphasis omitted).)  A "dental incident" is "any actual or alleged act, error or omission, or a series of actual or alleged acts, errors or omissions, in the supplying of or failure to supply professional services by you."  (<u>Id.</u>)  Jones argues that her claim in the underlying lawsuit arose out of Dr. Smilanich's failure to supply dental services.  Although he ultimately provided the dental services, there was an apparent failure to supply those services for approximately 20 months.  Whether that 20-month delay constitutes a failure to provide dental services is a disputed factual issue.  Moreover, there

is a dispute as to whether Dr. Smilanich's material misrepresentations, which injured Jones, arose out of a dental incident.  Thus, summary judgment is inappropriate and both Motions are denied.

**B.     Default Judgment**

The Smilanich Defendants have not entered an appearance in this case, although each was personally served and AAIC sought confirmation of that service in May 2020. (Aff. of Default (Docket No. 32) ¶¶ 5-7.)  On June 8, 2020, Dr. Smilanich emailed AAIC's counsel seeking Rule 26 disclosures, which AAIC's counsel provided to him.  (Id. ¶ 9.) Dr. Smilanich did not respond to a follow-up email inquiring whether he was represented by counsel.  (Id.)

AAIC applied for an Entry of Default (Docket No. 31) and the Clerk entered default against the Smilanich Defendants in November 2020 (Docket No. 33).  AAIC now seeks a default judgment under Rule 55(b)(2).  Jones does not oppose the Motion, except to the extent that it would have any effect on her ability to recover her judgment against them from the underlying jury award.  Jones does not explain how this would have any effect. Because the record does not reflect an assignment from the Smilanich Defendants to Jones, it is not clear whether a default judgment against those Defendants will operate to extinguish this coverage action. The Court therefore denies AAIC's Motion without prejudice.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that:**

1.    Plaintiff Aspen American Insurance Company's Motion for Summary Judgment (Docket No. 29) is **DENIED** and Motion for Entry of Default Judgment (Docket No. 29) is **DENIED without prejudice**; and

2.    Defendant Vickie M. Jones's Motion for Summary Judgment (Docket No. 34) is **DENIED**.

Dated: January 25, 2021

s/ Paul A. Magnuson
Paul A. Magnuson
United States District Court Judge